IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Paul Parker, ) | |
| ) | Civil Action No. 6:03-1588-26BI |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| School District of Greenville County, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his complaint, the plaintiff alleges causes of action against the defendant School District of Greenville County ("the School District") under the South Carolina Whistleblower Act and pursuant to Title 42, United States Code, Section 1983 for violation of his right to free speech under the First Amendment to the United States Constitution.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff was employed by the School District as an assistant principal at Lakeview Middle School from August 3, 1998, to June 29, 2001. The plaintiff's supervising principal was Brenda Humbert. In October 1999, the plaintiff wrote to the Director of

Special Education for the School District, Mary Smith, complaining about specific violations of the Individuals with Disabilities Education Act ("IDEA")[1] that were occurring at Lakeview.

In December 1999, Humbert called the plaintiff into her office and told him that the special education department wanted to "kick [his] ass" because of his complaints. In May 2000, after what the plaintiff saw as a "lack of action and continued federal law violations" by Humbert and Assistant Principal Elaine Hitch, the plaintiff wrote a letter to Dr. Rudolph Gordon, who was at that time Superintendent of the School District, regarding alleged violations of the IDEA. He also stated in the letter that Humbert had retaliated against him because of his earlier complaints about the IDEA violations. According to the plaintiff, the retaliation included Humbert giving his office to another administrator, placing a "false letter of reprimand" in his file without notifying him of any violation of policy, and not inviting him to a staff retreat (pl. aff. ¶¶ 1-6; pl. resp. m.s.j., ex. 3-6). Dr. Michelle Meekins, the Executive Director for Schools for the School District, prepared a memorandum to Dr. Gordon noting that Humbert had denied the plaintiff's accusations. Dr. Meekins requested that Dr. Gordon meet with her to review the matter (pl. resp. m.s.j., ex. 7).

In June 2000, the plaintiff requested a transfer to another school because of his issues with Humbert (pl. resp. m.s.j., ex. 8). On September 1, 2000, the plaintiff wrote a letter to Humbert again pointing out his concerns with the way Assistant Principal Hitch was disciplining special education students who were protected by the IDEA (pl. resp. m.s.j., ex. 9). On September 13, 2000, the plaintiff wrote a letter to Humbert stating that he was concerned that reports regarding the attendance and discipline of students at Lakeview

---

[1] The IDEA is a federal statute that applies to the education of students with disabilities who are receiving education from local educational agencies such as the School District. Generally, the IDEA requires that students receive services to assist with their disability from the local educational agency. The local agency must hold certain meetings provided for in the IDEA after a student has been out of his or her placement for more than 10 days, including time during which the student is suspended from school. Accurate recordkeeping of in-school and out-of-school suspensions is necessary to determine if a student has been outside of the appropriate placement for more than the ten day limit set out in the IDEA (pl. resp. m.s.j., ex. 2, stip. of facts ¶¶ 9-10). *See* 20 U.S.C. §§1400-1487.

were being falsified (pl. resp. m.s.j., ex. 10). On November 1, 2000, the plaintiff wrote another letter to Humbert regarding Hitch's "disregard for the federal guidelines" set out in the IDEA. He included several allegations of violations of the IDEA by Hitch. The letter was copied to Jane Powell, the Special Education Area Coordinator, and Dr. Sandra Welch, Area Assistant Superintendent (pl. resp. m.s.j., ex. 11).

On November 6, 2000, the plaintiff sent a letter to Humbert describing incidents that occurred at Lakeview that he believed to be violations of the IDEA by Hitch. He copied the letter to Powell (stip. of facts, ¶ 5, ex. A). According to the stipulation of facts by the parties, the letter accurately describes incidents that occurred at Lakeview concerning students with disabilities (stip. of facts, ¶¶ 7-8). In response to the letter, Powell prepared memoranda to Humbert dated November 15 and 21, 2000 (stip. of facts, ex. B, C). The plaintiff's letter was the first knowledge Powell had of the specific allegations contained within it (stip. of facts, ¶¶ 6, 14).

On November 21, 2000, the plaintiff sent a letter to Dr. William Harner, who was at that time the Superintendent of the School District. The plaintiff set out examples of alleged retaliation by Humbert because of the plaintiff's complaints of violations of the IDEA (pl. resp. m.s.j., ex. 12).

In June 2001, the plaintiff was notified that he had been transferred for the following school year to Bryson Middle School ("Bryson") (pl. aff. ¶ 8). While the plaintiff was an assistant principal at Bryson, his supervising principal was Dr. Billie McGaha. According to Dr. McGaha, the plaintiff was good at his job and she "was always impressed with him" (McGaha dep. 6). The plaintiff stated in his deposition that he had a good working relationship with Dr. McGaha and the problems he observed at Lakeview did not occur at Bryson (pl. dep. 74).

During the relevant time period, four assistant superintendents worked directly under the superintendent. The areas of supervision for each assistant consisted of a feeder

3

system of schools with roughly equivalent student populations. From 1998 through June 2003, Leroy A. Hamilton, Jr., was the assistant superintendent over Group 4 schools, which included Bryson Middle School. Lakeview was not included within Group 4 (Hamilton aff. ¶¶ 4-6). Sandra Welch was the assistant superintendent who supervised Lakeview, and the other assistant superintendents were Michelle Meekins and Ken Peake.

According to Hamilton's affidavit, during the 2001-2002 school year, all assistant principals within the School District were required to sign a contract for the 2002-2003 school year with a "Stipulation for Assistant Principals." The stipulation was attached to the contracts due to a pending budgetary shortfall. The plaintiff executed a contract for the 2002-2003 school year on April 15, 2002, which included the stipulation (Hamilton aff. ¶¶ 7-8, ex. A). The stipulation stated in pertinent part:

> Employee agrees as part of this contract that Employer, in its sole discretion, may change Employee's position from assistant principal to classroom teacher. Employee further agrees that this right to change the position includes the right to reduce the compensation due employee under this contract commensurate with the compensation appropriate for Employee's service as a classroom teacher.

(Hamilton aff. ¶ 9, ex. A). The stipulation went on to explain that the School District was facing a budgetary shortfall for the school year 2002-2003, which created a possibility that all over-baseline[2] assistant principal positions could be eliminated for that school year (Hamilton aff., ex. A).

The assistant superintendents were instructed to eliminate above-baseline administrative positions. As a result, 21 assistant principals were demoted to classroom teaching positions (Hamilton aff. ¶¶ 11-13). The plaintiff was one of the assistant principals demoted. On June 20, 2002, he was notified that he had been reassigned as a social

---

[2] "Above-baseline administrative positions are those administrative positions assigned to a particular school that exceed the District's allocation formulas for employee assignment, based on the size of a given school. Under those guidelines, a school is allocated more administrative employees as the student population increases" (Hamilton aff. ¶ 12).

4

studies teacher at Greenville Middle School (pl. aff. ¶ 11).  According to Hamilton, after the positions were eliminated, partial funding was restored. The superintendent instructed the assistant superintendents to place all Furman Fellows[3] as administrators.  Twelve of the 13 Furman Fellows graduates were placed as assistant principals or administrative assistants within the School District for the 2002-2003 school year (Hamilton aff. ¶¶ 15-17).  Some time after the plaintiff was reassigned, an assistant principal from another school, Judy Whitson, was laterally transferred to the position of assistant principal at Bryson. According to Hamilton, Whitson "was deemed to have the level of likelihood of moving to a principal position" (Hamilton dep. 31-33).  According to Whitson's transfer form, the principal at Bryson was notified that Whitson had been placed as the assistant principal at least by July 18, 2002, some three weeks after the plaintiff was notified that he was being reassigned (pl. aff. ¶ 11; pl. resp. m.s.j., ex. 25).  The transfer form also stated:

>Is this a new position?  No.
>
>If No, who does this request replace?  Paul Parker.

(Pl. resp. m.s.j., ex. 25).

Hamilton testified that the plaintiff was reassigned due to budgetary constraints, because he did not see a reasonable possibility that the plaintiff would be promoted to a principalship in the future, and in order to adequately place graduates of the Furman Fellows program (Hamilton aff. ¶ 23).  At the time of the reassignment process, Humbert was no longer employed by the School District.  Hamilton testified in his affidavit that at no time during the process did he personally communicate with Humbert, and that, upon information and belief, none of the other assistant superintendents participating in the reassignment decision communicated with Humbert (Hamilton aff. ¶¶ 18-20).  Hamilton further stated that he did not review the plaintiff's employment file in making the

---

[3]The Furman Fellows program is a special program designed in conjunction with Furman University in which participants receive a Masters in Educational Administration (Hamilton aff. ¶ 16).

5

reassignment decision (Hamilton aff. ¶ 22). According to Assistant Superintendent Welch, who had been the plaintiff's supervising assistant superintendent while he was at Lakeview, she knew of the plaintiff's complaints about the IDEA violations at the time they happened, but she did not recall that information at the time of the reassignment decision. She further testified that the plaintiff's statements were not discussed by the assistant superintendents while they were making the reassignment decision (Welch dep. 56-57). Hamilton testified that he was the final supervisor to make a recommendation to the superintendent on the reassignment of the plaintiff to a classroom teaching position, and at the time he made that recommendation, he had no knowledge or information that while employed at Lakeview the plaintiff had made allegations that Humbert and/or other employees had violated students' rights under the IDEA (Hamilton aff. ¶ 21).

Shortly after the reassignment decision, the plaintiff filed an Employee Grievance Statement alleging that the School District failed to consider him for an open assistant principal position in violation of a School District policy regarding the "Elimination of Positions by Board Action" (Mitchell aff. ¶ 7). The School District's Executive Director for Human Resources, G. Patterson Mitchell, Jr., was the hearing officer for the grievance appeal (Mitchell aff. ¶ 9). The hearing was held on November 19, 2002. In the grievance and in the hearing, the plaintiff did not allege that he was reassigned because of any allegations he made regarding violations of the IDEA. Mitchell determined that the plaintiff was not entitled to any remedy as a result of the grievance because the School District properly reassigned the plaintiff under District policy. The plaintiff appealed the determination to the Board of Trustees, who heard the appeal on January 14, 2003. Again, the plaintiff alleged that the School District failed to apply District policy, and no allegation was made that the reassignment was in retaliation for allegations he made regarding violations of the IDEA. The Board denied the plaintiff's appeal (Mitchell aff. ¶¶ 7-16, ex. A,

B, C). The plaintiff filed the instant lawsuit in state court on April 7, 2003, and it was removed to this court based upon federal question jurisdiction on May 8, 2003.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's

7

position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

The plaintiff contends that the School District moved him to Bryson "knowing that the job would be cut in retaliation for [his] continued complaints about clear IDEA violations at Lakeview Middle School" (pl. aff. ¶ 9). In his first cause of action, the plaintiff alleges that the School District retaliated against him in violation of the South Carolina Whistleblower Act ("the Act"), and in the second cause of action, he claims that his reports of violations of the IDEA were protected statements about matters of public concern and the actions taken against him violated his right to free speech.

***First Amendment***

The defendant argues that the plaintiff's First Amendment claim should be dismissed because the plaintiff's protected speech was not a substantial factor in the School District's decision to demote him (def. m.s.j. 8-10). In order to prevail on a First Amendment retaliation claim, the plaintiff must show that (1) he engaged in protected expression regarding a matter of public concern; (2) that his interest in First Amendment expression outweighs his employer's interests in efficient operation of the workplace; (3) that he was deprived of some valuable benefit; and (4) that a causal relationship exists between his protected expression on matters of public concern and the loss of the benefit. *Peters v. Jenny*, 327 F.3d 307, 322 (4th Cir. 2003).

In *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 351-52 (4th Cir. 2000), the Fourth Circuit Court of Appeals analyzed the causal relationship requirement in determining if protected speech was a "substantial factor" in a public employee's discharge. The court noted that the plaintiff bears the burden of demonstrating that his protected speech was a "substantial factor" in the governmental employer's decision to suspend him. *Id.* at 356. The court stated that to satisfy his burden, the plaintiff needed "to produce . . . evidence that the protected speech - the allegations of safety violations - was a 'substantial factor' in his suspension or that the articulated justifications for his suspension were a pretext." *Id.* at 358.

In *Goldstein*, the court noted that the plaintiff "submitted no evidence, even following the completion of extensive discovery, that the substance of his protected speech was a substantial factor behind his suspension." *Id.* at 356. The court further noted that the plaintiff's argument was "that because some of his allegations were true, the suspension must have been substantially caused by the allegations." *Id.* at 358. The court rejected this argument and affirmed the district court's order granting summary judgment.

Similarly, in this case, the plaintiff has failed to present sufficient evidence that his demotion was in retaliation for his protected speech. In his deposition, the plaintiff admitted that his only evidence that he was demoted in retaliation for his statements was that "there is no other evidence for reason for demoting me" (pl. dep. 109). The plaintiff's suspicion of retaliatory conduct was directed solely at Brenda Humbert, his former supervising principal at Lakeview (pl. dep. 108). However, the evidence in the record shows that she had absolutely no input into the decision to reassign the plaintiff, and she was not even employed with the School District at the time of his reassignment (Hamilton aff. ¶¶ 18-20). Further, Hamilton, the primary decisionmaker with regard to the plaintiff's demotion, was unaware of the plaintiff's allegations of violations of the IDEA by School District employees at Lakeview (Hamilton aff. ¶¶ 21-23). Based upon the foregoing, the plaintiff has failed to show the existence of a causal relationship between his protected expression on matters of public concern and his demotion. Accordingly, summary judgment should be granted on this cause of action.

***South Carolina Whistleblower Act***

The Whistleblower Act states, "If an employee is dismissed, suspended from employment, demoted, or receives a decrease in compensation, within one year after having timely reported an alleged wrongdoing under this chapter, the employee may institute a nonjury civil action against the employing public body . . . ." S.C. Code Ann. §8-27-20(A) (Law. Co-op. 1993).[4] The Act goes on to state, "Notwithstanding the filing of a report pursuant to this chapter, a public body may dismiss, suspend, demote, or decrease

---

[4] Prior to being amended in 1993, the Act created a rebuttable presumption of retaliatory discharge if an employee was terminated within one year of reporting any violation or wrongdoing. S.C. Code Ann. §8-27-30 (Law. Co-op. Supp.1989) (amended 1993). An employer could rebut this presumption by showing the employee was discharged for reasons other than whistleblowing. *Id.* §8-27-40 (Law. Co-op. Supp.1989) (amended 1993). The 1993 amendment eliminated this presumption.

10

the compensation of an employee for causes independent of the filing of a protected report as described in Section 8-27-20." *Id*. §8-27-40.

The defendant argues that the plaintiff does not meet the statutory definition of a whistleblower because he was not demoted within one year of having reported alleged wrongdoing (def. m.s.j. 11-12). The plaintiff's November 21, 2000, letter to Dr. Harner was the last communication he sent to any School District employee notifying the School District of alleged violations of the IDEA at Lakeview (pl. dep. 103-104). He was demoted on July 11, 2002, approximately 18 months after his last report of wrongdoing. The plaintiff argues that there is a "continuing violation" because the plaintiff "engaged in a series of protected activities, including within one year of the first of the district's two steps toward demotion" (pl. resp. m.s.j. 5). Specifically, the plaintiff claims that his transfer to Bryson, an above-baseline school, in June 2001 was done with the intent that the plaintiff would be demoted a year later in retaliation for his complaints regarding violations of the IDEA under the pretext of a budgetary crisis (pl. resp. m.s.j. 5). Accordingly, the plaintiff argues that the first step of his demotion was well within a year of his last report of wrongdoing. However, the plaintiff has presented no evidence in support of his claim.

The defendant next argues that the plaintiff's cause of action under the Whistleblower Act should be dismissed because the plaintiff "was demoted for causes independent of the filing of any report of wrongdoing*"* (def. m.s.j. 10-11). In *Gastineau v. Murphy*, 503 S.E.2d 712 (S.C. 1998), cited with approval by both parties, the South Carolina Supreme Court stated that the circumstantial evidence presented in support of an employee's Whistleblower Act claim was not sufficient to find that the employee's supervisor was aware of the employee's statements at the time of his termination. Thus, the court held that "[n]o reasonable jury could have concluded from the evidence introduced at trial that Gastineau was fired in retaliation for reporting conduct which he believed to be illegal." *Id.* at 714. Accordingly, the court found that the trial judge erred in failing to grant

11

the defendant's motion for JNOV. *Id.* at 716. Similarly, in this case, the plaintiff has presented no evidence that the supervisor who recommended his demotion had any knowledge that the plaintiff had made a report of wrongdoing while employed at Lakeview. Hamilton testified that the plaintiff was reassigned due to budgetary constraints, because he did not see a reasonable possibility that the plaintiff would be promoted to a principalship in the future, and in order to adequately place graduates of the Furman Fellows program (Hamilton aff. ¶ 23). Based upon the foregoing, summary judgment should be granted on this cause of action.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendant's motion for summary judgment be granted. The defendant's pending motion *in limine* will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, the motion will be rendered moot.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

March 14, 2005

Greenville, South Carolina